1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                                   EUREKA DIVISION

7

8    MICHAEL THOMPSON,                          Case No.  12-cv-06529-NJV
                    Plaintiff,
9
          v.                                    ORDER DENYING DEFENDANTS'
10                                              MOTION FOR ATTORNEY'S FEES
     RONALD J. HARRIS, et al.,                  AND SANCTIONS
11                  Defendants.                 Re: Dkt. No. 59
12

13                                  **BACKGROUND**

14          Plaintiff filed a civil rights complaint in federal court on December 26, 2012.  *See* Doc.

15   No. 1.  He alleged that Defendants, the owners of a self-storage facility, discriminated against him

16   by locking him out of his unit and terminating his rental agreement.  Plaintiff asserted several

17   claims, but federal jurisdiction existed based solely on the inclusion of a 42 U.S.C. § 2000a claim

18   in his complaint.  Section 2000a prohibits discrimination in "places of public accommodation."

19   Doc. No. 1.  The remaining claims in the complaint were all state law claims.  *See id*.

20          Defendant answered the complaint and did not file a motion to dismiss.  *See* Doc. No. 4.

21          On March 25, 2013, the parties filed a Joint Case Management Statement.  Doc. No. 8.

22   The parties identified several legal issues in dispute, including "Whether Rainbow Self Storage is

23   a place of public accommodation…"  Doc. No. 8 at 2.  Defendants also stated that they anticipated

24   filing a motion for summary judgment.  *Id*.

25          Defendants' counsel declares that he informed Plaintiff during the course of a November

26   26, 2013 settlement conference that a self-storage facility was not a "place of public

27   accommodation" as defined in the statute.  Doc. No. 59 at 5; Doc. No. 60 ¶ 6.

28          In their Joint Pretrial Statement, the parties agreed that Defendants' storage facility "does

not provide lodging to transient guests, does not sell food for consumption on the premises and is not a place of exhibition or entertainment." Doc. No. 32, § 3(8). On December 30, 2013, Defendants filed a trial brief arguing that, based on the facts admitted by Plaintiff, Rainbow Self Storage was not a place of public accommodation within the meaning of Section 2000a. Doc. No. 38. Plaintiff's counsel continued to file pretrial documents.

Having reviewed the pretrial filings, the court discussed the issue of subject matter jurisdiction with the parties on January 14, 2014. The court vacated the upcoming trial date and issued an Order to Show Cause:

> The establishment in this case is a self storage business. Such businesses are not among those listed under subsection (b) above as a place of public accommodation under 42 U.S.C. § 2000a. Further, it appears that the list above is exhaustive. *See* 110 Cong.Rec. 1520 (1964) (explaining that "in addition to these enumerated establishments" the establishments described in subsection (4) would also be covered); *Id*. at p. 1522 (explaining the provisions of Title II of the Civil Rights Act of 1964, and stating that "[t]hese provisions are applicable to certain designated establishments - places of lodging, eating places, gasoline stations, and places of exhibition or entertainment"); *Id*. at p. 1525 (stating that the proposed legislation "would preclude discrimination or segregation at any of the establishments specifically enumerated in that section (e.g., hotels, motels, restaurants, and other eating facilities, gasoline stations, places of public entertainment) if such discrimination or segregation 'is supported by State action'"); *Id*. at p. 1526 (proposed legislation "does not extend to all establishments in which discrimination may be 'supported' by the State; section 201 covers, even with regard to State action, only those establishments within the specific categories defined in the section; i.e., hotels, motels, eating places, gasoline stations, places of amusement, etc.")…
>
> It therefore appears that, as Defendants argue, Rainbow Self Storage may not be a place of public accommodation under 42 U.S.C. § 2000a. If this is so, the claim on which Plaintiff relies for federal subject matter jurisdiction over this action fails. Therefore, the court will require Plaintiff to show cause why his claim pursuant to 42 U.S.C. § 2000a-2 should not be dismissed either for failure to state a claim upon which relief can be granted or for lack of federal subject matter jurisdiction.

Doc. No. 43 at 2-3.

Although Plaintiff responded to the Order to Show Cause, he did not address the legislative history the court had cited, and he did not identify any case directly supporting his position. Doc. No. 44. Plaintiff did, however, ask the court to retain supplemental jurisdiction over his state law

United States District Court
Northern District of California

2

1  claims if it dismissed his sole federal claim, and sought leave to amend his complaint to plead an

2  additional federal cause of action.  *Id.*  Defendants objected to both requests.  Doc. No. 45.

3        The court discharged the order to show cause, stayed its ruling on subject matter

4  jurisdiction, and granted Plaintiff leave to file a motion for leave to amend:

> In his response to the Order to Show Cause, Plaintiff seeks leave to amend his complaint to plead an additional federal claim for relief. Plaintiff seeks to add a claim under 42 U.S.C. §1982, which provides, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968) (holding that statute bars all racial discrimination, private as well as public, in sale or rental of property).
>
> Plaintiff, however, has not actually filed a motion to amend, nor provided a proposed first amended complaint. **The court notes that a showing of good cause is required in circumstances such as this where the deadline for amending pleadings set forth in the Case Management Order has passed. Fed.R.Civ.P. 16(b)(4).** Accordingly, the court will not rule on Plaintiff's request at this time, but will grant Plaintiff until March 4, 2014, to file a motion to amend, accompanied by a proposed first amended complaint.

Doc. No. 48 at 2 (emphasis added).

      Plaintiff filed a motion for leave to file a first amended complaint.  Doc. No. 49.  Plaintiff

did not address the "good cause" standard the Court explicitly had referenced in its order

discharging the order to show cause.  *Id.*  Defendants opposed the motion and also filed a motion

to dismiss.  Doc. Nos. 51-53.

      The court denied the motion for leave to file a first amended complaint because Plaintiff

had not shown good cause for doing so:

> Plaintiff exhibited a lack of diligence in moving to modify the court's Case Management Order and amend his complaint. Plaintiff, of course, had a duty to prosecute his own case. Beyond that, he was reasonably put on notice of the issue regarding the sufficiency of his complaint by language in the parties' Joint Case Management Conference Statement listing "[w]hether Rainbow Self Storage is a place of public accommodation as defined with the Civil Rights Act of 1964," as a legal issue in the case. [] Defendants then highlighted the issue in their Trial Brief filed December 30, 2013. [] As Defendants argue, Plaintiff had the opportunity, at the very least, to move at the Pre-Trial Conference to modify the Case Management Order. Instead, the court was forced to vacate the trial date, and issue an Order to Show Cause, and after that hearing, order Plaintiff

3

to file an appropriate motion.

Plaintiff presents no serious justification for failing to move to amend the court's Case Management Order within the allowable time. He simply argues that "[m]inor negligence on the part of Plaintiff's counsel does not amount to dilatory motive." However "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d at 609. While the court attributes no bad motive to Plaintiff, the court finds that the deadline for amending pleadings set forth in the Case Management Order could reasonably have been met if Plaintiff had exercised diligence in seeking to amend his complaint. *See* Fed.R.Civ.P.16 advisory committee's notes (1983 amendment). The court must therefore find that Plaintiff has failed to carry his burden of showing good cause for seeking to modify the schedule established by this court almost eight months after the deadline for doing so.

Doc. No. 57 at 6.  The court also granted Defendants' motion to dismiss and allowed Defendants to file a motion for attorneys' fees and for Rule 11 sanctions.  *Id*. at 6-8.  Defendants did so. The motion was fully briefed and came on for hearing on June 24, 2014.

# DISCUSSION

Defendants request attorneys' fees and sanctions pursuant to 42 U.S.C. § 2000a-3(b), 28 U.S.C. § 1927, and the court's inherent authority.  Doc. No. 59.  For the reasons set forth below, the court will deny Defendants' motion.

**A.  42 U.S.C. Section 2000a-3(b)**

Section 2000a-3(b) provides that in "any action commenced" pursuant to Section 2000a, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  Courts only may exercise their discretion to award attorney's fees to a prevailing defendant in a civil rights action if the action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).  "An action becomes frivolous when the result appears obvious or the arguments are wholly without merit." *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (citing *Christiansburg*, 434 U.S. at 422).  An action can become frivolous at any point in the litigation.  *See Christiansburg*, 434 U.S. at 422.  Courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."

United States District Court
Northern District of California

1  *Christiansburg*, 434 U.S. at 421-22.  For example, although plaintiffs may be unable to defeat

2  summary judgment, this "does not mean that [the] claims were groundless *at the outset*."  *Karam*

3  *v. City of Burbank*, 352 F.3d 1188, 1196 (9th Cir. 2003) (emphasis added; citations omitted).  For

4  this reason, courts frequently deny fee awards to defendants who have prevailed on a motion to

5  dismiss or summary judgment.  *See, e.g., Gibson v. Office of Att'y Gen., State of Cal.*, 561 F.3d

6  920, 929 (9th Cir. 2009); *Summers v. Teichert & Sons*, 127 F.3d 1150, 1154 (9th Cir. 1997); *Parks*

7  *School of Business, Inc. v. Symington*, 51 F.3d 1480, 1489 (9th Cir. 1995).  "In applying the

8  *Christiansburg* standard, courts have awarded attorney's fees to defendants where plaintiff's cause

9  of action was either 'egregious' or 'patently baseless for objective reasons.'"  *Navarro v. General*

10  *Nutrition Corp.*, 2004 U.S. Dist. LEXIS 24258, *53-*54 (N.D. Cal. Nov. 19, 2004).  Awarding

11  fees to prevailing defendants remains exceptional, as the "chilling effect upon civil rights plaintiffs

12  would be disproportionate to any protection defendants might receive."  *Mitchell v. Office of LA*

13  *County Superintendent of Sch.*, 805 F.2d 844, 847-48 (9th Cir. 1986).

14          Defendants acknowledge that the court here did not rule on the merits of Plaintiff's state

15  law discrimination claims, but contend that they nonetheless are entitled to fees because Plaintiff's

16  sole federal claim was "frivolous."  Doc. No. 59 at 7.  Plaintiff argues that "there is nothing in the

17  language of 42 U.S.C. [§] 2000a which limits application of the law to the specifically enumerated

18  types of entities.  The express language clearly applies the law to establishments effecting

19  interstate commerce.  Please note the use of semicolons after the words, 'public accommodation'

20  in 42 U.S.C. [§] 2000a."  Doc. No. 62 at 3 (citing a Wikipedia entry on the use of semicolons).

21  Plaintiff's textual interpretation is without merit.  In relevant part, Section 2000a provides that:

22

23          Establishments affecting interstate commerce or supported in their
         activities by State action as places of public accommodation;
24          lodgings; facilities principally engaged in selling food for
         consumption on the premises; gasoline stations; places of exhibition
25          or entertainment; other covered establishments. Each of the
         following establishments which serves the public is a place of public
26          accommodation within the meaning of this title [42 USCS §§ 2000a-
         2000a-6] if its operations affect commerce, or if discrimination or
27          segregation by it is supported by State action:

28            (1) any inn, hotel, motel, or other establishment which provides
         lodging to transient guests, other than an establishment located
         within a building which contains not more than five rooms for rent

United States District Court
Northern District of California

1        or hire and which is actually occupied by the proprietor of such establishment as his residence;

2        (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

3

4        (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

5        (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

6

7

8        Plaintiff does not cite a single case illustrating that Section 2000a has been extended to any

9 entity that is not enumerated in the statute, a single treatise suggesting that it can or should be, and

10 does not address the legislative history or the issues this court previously raised in denying

11 Plaintiff's motion for leave to amend.  At the hearing on the motion for sanctions, Plaintiff

12 conceded that there was a paucity of case law to support his interpretation of the statute, and no

13 Ninth Circuit case on point.  Plaintiff instead relies on two cases, which he contends support his

14 argument that a self-storage business could be construed as an "other establishment" that "receives

15 supplies, equipment, or goods through the channels of interstate commerce" and thus should be

16 considered a "public accommodation" that "affects commerce."  Doc. No. 62 at 4 (citing *Daniel v.*

17 *Paul*, 395 U.S. 298, 308 (1969) and *U.S. v. Allen*, 341 F.3d 870, 878 (9th Cir. 2003)).  In *Daniel*,

18 the Supreme Court examined whether the Lake Nixon Club, a "232-acre amusement area with

19 swimming, boating, sun bathing, picnicking, miniature golf, dancing facilities, and a snack bar"

20 was a "place of entertainment" under the statute.  395 U.S. at 301.  The defendants argued that a

21 "place of entertainment" should be limited to facilities where patrons passively receive

22 entertainment rather than participate in the entertainment.  *Id*. at 306.  The Supreme Court rejected

23 that argument, holding that "the statutory language 'place of entertainment' should be given full

24 effect according to its generally accepted meaning and applied to recreational areas."  395 U.S. at

25 308.  In *Allen*, the defendants argued that the park in which they harassed and intimidated their

26 victims was not a "public accommodation" under the statute because "it did not provide sources of

27

28

United States District Court
Northern District of California

entertainment that affected interstate commerce." 341 F.3d at 877.[1]  The Ninth Circuit disagreed, citing the ample evidence in the record that established that the operations of the park did affect interstate commerce.  *Id*.  Thus, while both *Daniel* and *Allen* stand for the proposition that parks are "places of entertainment" under the statute, and for the proposition that an establishment is covered by the statute only if it affects interstate commerce, neither case stands for the proposition that any establishment that affects interstate commerce is covered by the statute.[2]

Plaintiff also argues that he should not be sanctioned for arguing for a different interpretation of a statute or extension of a doctrine of law.  Doc. No. 62 at 5.  The first time Plaintiff articulated that he was arguing for an extension of the law was in response to the court's order to show cause.  But, Plaintiff here is not arguing for an extension of Section 2000a.  Instead of attempting to fit the self-storage establishment into one of the enumerated categories of the statute, he seeks to rewrite the statute in a fundamental manner by including in the definition of "place of public accommodation" *any* establishment that affects interstate commerce.  Plaintiff disingenuously cites *Welsh v. Boy Scouts of America*, 993 F.2d 1267 (7th Cir. 1993) for the proposition that "more than one federal judge" agrees that Section 2000a should be "applied to all businesses open to the public."  Doc. No. 62 at 6.  Plaintiff fails to acknowledge that the Seventh Circuit in that opinion actually came to the opposite conclusion and held that a "membership organization" simply did not fall within the ambit of the statute: "To conclude that Title II includes membership organizations like the Boy Scouts, one would have to assume that Congress' use of the term 'place' was mere surplusage in the statute, and that the fifteen specific examples of places fail to illuminate the meaning of the term 'place.' The plaintiffs' and the dissent's interpretation of the term 'place' fails to pay heed to the rule of statutory construction that 'a court

---

[1] *U.S. v. Allen*, 341 F.3d 870, 878 (9th Cir. 2003), involved an appeal by skinheads who had been convicted of violating 18 U.S.C. §§ 241 and 245(b)(2)(B), criminal statutes that protect against the interference with federally protected rights on the basis of race and religion. The Section 241 charge was premised on a violation of 42 U.S.C. § 2000a.

[2] While the Supreme Court in *Daniel* (in a footnote) cited comments by President Kennedy and various Congressmen "in which they stated that 'recreational areas' and 'other establishments which receive supplies, equipment, or goods through the channels of interstate commerce' should be considered 'public accommodations' that 'affect commerce'" (395 U.S. at 307 n.10), neither the comments nor the Supreme Court address whether the "other establishments" are those enumerated in the statute or different, un-enumerated establishments.

1   should not construe a statute in a way that makes words or phrases meaningless, redundant, or

2   superfluous.'"  993 F.2d at 1272 (citations omitted).  Thus, Plaintiff is relying on the dissent (by

3   one judge—not "more than one federal judge") in an opinion from the Seventh Circuit to argue

4   that his position here was "not unreasonable" (Doc. No. 62 at 6), when the reasoning of the

5   majority actually scuttles his argument.  Moreover, Plaintiff fails to argue how the law is

6   "unsettled," much less demonstrate that it is.  *See* Doc. No. 62 at 5-6.

7        Plaintiff concedes that his "arguments may have been weak."  Doc. No. 62 at 4.  However,

8   Plaintiff urges that they were "not patently frivolous" and thus that this case does not meet the

9   *Christianburg* standard.  While the undersigned agrees with Defendants that the Section 2000a

10  claim lacked merit, it declines to award fees against Plaintiff pursuant to Section 2000a-3(b).  First

11  and foremost, the court finds that any fault here lies more with Plaintiff's counsel than with

12  Plaintiff himself.  There is no suggestion that Plaintiff mislead his counsel (or the court) as to the

13  *facts* of this claim; rather, it was counsel's decision to include a Section 2000a claim in the

14  complaint.  While Defendants vigorously maintain that Plaintiff's claims of discrimination also

15  lack factual foundation, no court has yet made that determination.  Given these circumstances, the

16  court is reluctant to punish Plaintiff himself.  *See R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d

17  1117, 1127 (9th Cir. 2011) (reversing award of sanctions in civil rights case because plaintiffs

18  would have had plausible claim under other civil rights statute if they had been allowed to amend

19  complaint: "While the district court was well within its discretion in denying the parents leave to

20  amend and dismissing their case, the parents' argument for leave to amend wasn't frivolous" and

21  claims did not meet *Christiansburg* standard); *see also Cotterill v. San Francisco*, 2010 U.S. Dist.

22  LEXIS 28310, *17 (N.D. Cal. Mar. 10, 2010) (declining to award sanctions against plaintiff in

23  civil rights action rather than against counsel because it "would leave Plaintiff penniless and deter

24  the wrong person").  Secondarily, Defendants here are not blameless with respect to the costs they

25  have incurred.  They chose not to move to dismiss the claim or the action on that ground, or to file

26  a motion for summary judgment on that ground.  Instead, they sat back and continued preparing

27  the case for trial and incurring associated costs.  Although Defendants were entitled to litigate the

28  case as they saw fit, the court notes that they could have disposed of it earlier and more efficiently

United States District Court
Northern District of California

8

1   through motion practice.

2          The court, conscious (1) of the danger of engaging in *post hoc* reasoning; (2) of the broad,

3   remedial nature of civil rights law; (3) of the lack of resolution regarding the merit of Plaintiff's

4   factual claims; (4) of the role of Plaintiff's counsel had in choosing to include the Section 2000a

5   claim in the action; and (5) that Defendants' strategic decisions contributed to the costs

6   Defendants now seek to recover, denies Defendants' motion for fees pursuant to Section 2000a-

7   3(b).

8          **B.  28 U.S.C. Section 1927**

9          Courts also may award sanctions against counsel who "multiplies the proceedings in any

10  case unreasonably and vexatiously." 28 U.S.C. § 1927.  Section 1927 authorizes sanctions only

11  against counsel.  *See FTC v. Alaska Land Leasing, Inc*., 799 F.2d 507, 510 (9th Cir. 1986).

12  Importantly, Section 1927 cannot be applied to initial pleadings.  *In re Keegan Mgmt. Co., Sec.*

13  *Litig*., 78 F.3d 431, 435 (9th Cir. 1996) ("The filing of a complaint may be sanctioned pursuant to

14  Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927").  In the

15  Ninth Circuit, district courts have the discretion to assess an award of fees under Section 1927

16  only if three elements are present: (1) the attorney's actions multiplied the proceedings; (2) the

17  attorney's actions were vexatious and unreasonable; and (3) the attorney must have acted

18  recklessly or in bad faith.  *See United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983); *see*

19  *also In re Keegan*, 78 F.3d at 435.  The undersigned finds the first two elements are present here,

20  but that while this case presents a close question, the third element is absent.

21         Attorneys who continue to litigate a case despite a clear lack of relief under the law have

22  been found to unreasonably and vexatiously multiply proceedings.  *See, e.g., Trulis v. Barton*, 107

23  F.3d 685, 692 (9th Cir. 1997) (Section 1927 sanctions affirmed where plaintiff "vexatiously

24  continued this suit after the order confirming the [bankruptcy plan] explicitly barred it…. the law

25  governing the preclusive effect of confirmed bankruptcy plans is clear and unequivocally bars this

26  suit"); *Cinquini v. Donohoe*, 1996 U.S. Dist. LEXIS 2131, *8 (N.D. Cal. Feb. 8, 1996)

27  (maintaining suit despite clear authority showing that appeals were frivolous); *cf. Cotteril*, 2010

28  U.S. Dist. LEXIS 28310, at *43 (Section 1927 sanctions appropriate where plaintiff maintained

United States District Court
Northern District of California

9

United States District Court
Northern District of California

suit when "no reasonable person" would have considered client's testimony sufficient to continue case in light of evidence produced in discovery).  Attorneys who file baseless motions also have been found to unreasonably and vexatiously multiply proceedings.  *See, e.g., De Dios v. Int'l Realty & RC Invs*., 641 F.3d 1071, 1077 (9th Cir. 2011) (affirming section 1927 sanctions where plaintiff filed procedurally improper motion to disqualify counsel despite knowledge of existence of waiver and indemnity agreement).  Whatever factual merits Plaintiff's discrimination claims may have had, the record here establishes that his counsel multiplied the proceedings in this case unreasonably after this court discharged its order to show cause and granted his request for leave to file a motion for leave to amend if he could meet the Rule 16 "good cause" standard for doing so.  Plaintiff filed his motion for leave to amend, but failed to even address the good cause standard the court had specifically referenced, focusing his argument instead on the very liberal (and inapplicable) Rule 15 standard for amendment.  *See* Doc. No. 49.  Rather than dismissing the action of his own volition, choosing not to file a motion for leave to amend when he realized he could not meet the good cause standard, or withdrawing his motion after Defendants pointed out it did not meet the good cause standard, Plaintiff forced Defendants (and the court) to address it.  Because Plaintiff could not even articulate how he met the good cause standard, his motion for leave to amend was meritless.  This unreasonably and vexatiously multiplied the proceedings.  The first two prongs of Section 1927 accordingly are met.

Although it presents a close question, the record does not support a finding of bad faith for purposes of awarding fees to a prevailing defendant in a civil rights case.  "We assess an attorney's bad faith under a subjective standard.  Knowing or reckless conduct meets this standard."  *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991); *see also In re Keegan*, 78 F.3d at 436 ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent") (quotation and citation omitted).  Ignorance or negligence is not sufficient.  *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).  While Plaintiff's cavalier attitude towards case management deadlines and Federal Rules was, at the very least, negligent, the Ninth Circuit has oft stated its policy regarding the award of fees to prevailing defendants in civil rights cases:

We agree with the district court that Buckheit's claims against the County are "extremely weak." And yet, we do not agree that there is "no legal or factual basis" for them, which is required to grant fees to a prevailing civil rights defendant. *See Christiansburg*[, 434 U.S. at 420]. The County acknowledged at oral argument that it had a role in the formation of the domestic violence policy followed by the officers who arrested Buckheit. A challenge to that policy's provisions, as interpreted by the arresting officers, impelled Buckheit's suit. We conclude that the connection between Buckheit's claims and the County is "tenuous, but not frivolous." *See Traver v. Meshriy*, 627 F.2d 934, 939 (9th Cir. 1980).

Perhaps more importantly, where a defendant prevails in a 42 U.S.C. § 1983 suit, our practice requires us "to avoid discouraging civil rights plaintiffs from bringing suits"—even on claims that are creative—"and thus 'undercut[ting] the efforts of Congress to promote the vigorous enforcement of' the civil rights laws." *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011) (alteration in original) (quoting *Christiansburg*[, 434 U.S. at 422]). By tolerating creative lawyering, the law adapts and meets society's needs. We conclude that in this case an award of attorneys' fees to the County—a prevailing civil rights defendant—was not warranted, and we reverse the district court on that issue. [Citations.]

*Buckheit v. San Mateo*, 2014 U.S. App. LEXIS 9352, *4-*5 (9th Cir. May 20, 2014). While Defendants strenuously contest Plaintiff's factual allegations, this court has not ruled on the factual merits of the case under any of Plaintiff's other civil rights claims. In light of the Ninth Circuit's standard, and the lack of finding on the factual merits of the case, the arguments by Plaintiff's counsel that his extremely broad reading of the civil rights statute at issue was "not patently frivolous" and his observation that "stranger interpretations of [civil rights laws] have applied," are sufficient to defeat the request for fees in this instance.

## C. The court's inherent power

Defendants also request, albeit cursorily, that the court impose sanctions under its inherent power. Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). The Ninth Circuit has concluded that sanctions are available under the court's inherent power if "preceded by a finding of bad faith, or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th

1    Cir. 2001).  For the same reasons the court found that Plaintiff's counsel's conduct did not warrant

2    sanctions under Section 1927, the court finds that it does not warrant sanctions under the court's

3    inherent powers.

4                                      **CONCLUSION**

5           For the reasons stated above, the court denies Defendants' motion for attorneys' fees and

6    sanctions.

7

8           **IT IS SO ORDERED**.

9    Dated: June 27, 2014

10
                                        _____
11                                      NANDOR J. VADAS
                                        United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

12